Granger, C. J.
Clarissa M. Courtright sued in Rich-land common pleas upon a note reading as fellows:
“$8,000.
“ One year after date we, or either of us, promise to pay Clarissa M. Courtright or order, eight thousand dollars, with interest from March 1st, 1871, at eight per cent, per annum, payable semi-annually on the 1st day of September aud March each, until paid for value received. March 20, 1871. “ Henry Cook,
“Cyrus W. Cook.”
And also upon a mortgage securing the same. The Cooks by answer averred that the note was by its terms usurious, and was written by the plaintiff to evade the usury laws of the state; that the3r had paid on said note the entire principal, and interest thereon at six per cent, payable annually, and therefore owed the plaintiff nothing. She demurred to this defence. The common pleas overruled her demurrer, and the case proceeded to a final judgment dismissing the action at her costs. On her petition in error, the district court held her demurrer good, reversed the judgment and remanded the cause. The Cooks here ask a reversal of the judgment rendered b3r the district court.
Was the note-usurious? The act of May 4, 1869 (66 Ohio L., 91), was in force when it was delivered. The' first section reads thus: “ That the parties to any * * * promissory note * * * for the forbearance or payment of mone3T at any future time, may stipulate therein for the pa3rment of interest upon the amount of such * * * note * * * at any rate not exceeding eight per centum per annum, payable annually.”
If the words “pa3',able annually” were absent, the meaning would be plain. Being present, what is their effect?
Did the' legislature intend that no contract for a rate greater than six per cent, should be legal unless it contained a stipulation that -the interest should be pa3rable annually? Strict^’ speaking, no such stipulation could *250 apply to any obligations other than those payable in two, or more, years. The mass of the notes in use were then, as they now are, payable after so many days or months. To place the words “payable annually” in notes payable in thirty, sixty or ninety days, or in three, six or nine months, would postpone the right to collect the interest beyond the day fixed for payment of the principal. A like result would follow as to all notes running longer than one year if made payable within the last year of their term. Such a construction seems so unreasonable that we decline to adopt it.
But to hold the words applicable only to notes having more than one year to run would involve another difficulty. While it would erase them from the statute, so far as concerns the most numerous classes of interest bearing contracts, it would furnish a guide for all lenders to escape their effect. After a decision that these words do not apply to contracts for, less than one year, all notes to bear interest at a greater rate than six per cent, would be so written as to mature in less time than one year. Six months notes at eight per cent, per annum would be used. Although collectible after six months, the parties, on payment of the interest, could extend them, either by express contracts for successive half years, or by sufferance. In holding that the first section of the act of 1869 does not require, in all contracts under it, a stipulation that the interest must be “payable annually,” we follow Marietta Iron Works v. Lottimer, 25 Ohio St., 621.
Do the words “payable annually” form part of a phrase intended to guide the contracting parties in computing the legal rate on contracts made under the first section of this act? If so, such rates as 7.8887, 7.8888, 7.8889, 7.8899, would become common. Only skilled mathematicians could determine with precision the proper figures for the decimal part of the rate. Instead of a single rata per annum applicable to all contracts, there would fee different rates <per annum for notes at thirty, sixty and ninety days; or for three, six and nine months. It is improbable that the *251 legislature contemplated any such rates: any differences in the rate based upon the running time of the principal.
Moreover, the section provides that the interest that may be “ stipulated ” for .may be “ at a rate not exceeding eight per centum per annum upon the amount of such note.” The words “ amount of such note ” refer to the sum loaned, the original principal. Under a contract to pay eight per centum per annum, payable semi-annually, upon a given principal, the interest to be paid, upon that principal, is precisely the same as under a ’ contract to pay “ eight per centum per annum payable annually,” upon the same principal. If the installment of interest falling due at the end of six months should not be paid, and the law would permit interest to run upon it at six per cent, until paid, no part of that six per cent, interest would be interest upon the principal named in the note. And such interest upon interest, if collectible, would not form any part of the interest “ stipulated for.” If collectible at all it would be because of the other sections of the same statute.
The third section applies to “ all cases other than those provided for in the first and second sections of this act.” The first section we have quoted in full. The second applies to judgments, decrees and orders rendered upon any contract made under the first section. As the first section relates only to contracts for interest upon the principal, a suit for interest upon overdue interest may be considered a case “other than” those provided for by said section, and is therefore collectible under said third section. And, if separately sued for, the judgment obtained would draw interest under the fourth section.
But whether collectible, or not, such interest on interest clearly formed no part of the interest “ stipulated for,” and no part of the interest “upon the amount of such note.”
It is difficult to determine with a satisfied mind what the writer of this act intended by the words “payable annually.” Perhaps his idea was that no interest should be paid until it was earned by actual use of the principal on which it was to be computed, and he used the words “ payable *252 annually ” in the sense of “ payable during the year.” Perhaps he thought to forbid agreements for the actual payment of interest only at the end of the 37ear, swelled to a sum in excess of eight per centum per annum, by stipulations in the note making the interest upon the principal payable quarterly, semi-annually and the like, accompanied b3' express stipulations for interest upon each installment of interest from the day of its maturity; and relied upon a belief that the phraseology of the third section would not give statutory authority, for collecting such interest upon interest.
If we should deem either of these, conjectures sufficiently plausible to justify a construction of the statute in accordance with it, the note before us is not usurious, because it does not “ stipulate ” for interest upon overdue interest during any part of the year, and the interest was made payable as earned. The Revised Statutes having substantially adopted its provisions, we may say that this law has been in force almost fifteen years. As soon as its passage was known, the people understood it as a substantial re-enactment of the law of 1850, with the rate at eight instead of ten per cent. They have given it a practical construction, and based their transactions upon it.
If it were clear that their construction is wrong in any point affecting the note before us, it would be our duty to so pronounce, and to decide the true meaning. A careful consideration has satisfied us that no other construction that has been suggested by counsel, or that has occurred to us, applicable to this note, is less doubtful than the practical one adopted by the business community. Instances of the presence in a statute of words to which effect cannot be given have occurred heretofore. Some of us are inclined to look upon this as an instance of the kind. However that may be, we hold that the note before us is not usurious.

Judgment affirmed.